UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, 1800 Massachusetts Ave, Suite 301 Washington, D.C. 20036, <br><br> and <br><br> WILLIAM DEMPSEY, RODERICK S. BASHIR, KEVIN J. DOYLE, CHRISTOPHER BOUVIER, THOMAS LAMARTINA, EDWARD J. MANKO, JOHN J. SHERIDAN, FRANK A. MAXSON, LAPHONZA BUTLER, DAVID HUERTA TRUSTEES OF THE SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, 1800 Massachusetts Ave, Suite 301 Washington, D.C. 20036, <br><br> Plaintiffs, <br> v. <br><br> LITTLE ROCK BAPTIST CHARITY CARE CENTER, INC. d/b/a Lakeshore Healthcare Skilled Nursing & Specialty Care – Woodward Campus 7310 Woodward Avenue, 5th Floor Detroit, Michigan 48202 <br><br> Defendant. | Case No: 1:17-cv-2219 <br><br> **Additional Required Service under 29 U.S.C. § 1132(h) to:** <br><br> U.S. Department of Labor Attn: Assistant Solicitor for Plan Benefits Security 200 Constitution Ave., N.W. Washington, DC 20210 <br><br> U.S. Department of Treasury Attn: Secretary of the Treasury 1500 Pennsylvania Avenue, NW Washington, D.C. 20220 |

**COMPLAINT UNDER ERISA FOR DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, REMITTANCE REPORTS, ATTORNEY'S FEES AND COSTS**

**Introduction, Jurisdiction and Venue**

1. This is a civil action brought by an employee benefit plan, and by the Trustees of an employee benefit plan, pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2) and 1145 and Section 301(a) of the Labor Management Relations Act of 1947, as

amended ("LMRA"), 29 U.S.C. § 185(a), to collect unpaid collectively bargained contributions, interest, liquidated damages, Pension Protection Act surcharges and supplemental contributions, and audit fees owed by the Defendant.

2. Jurisdiction is conferred upon this Court by Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e) and (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as the Service Employees International Union National Industry Pension Fund is administered in the District of Columbia.

4. Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail on or about the date of filing.

## Parties

5. Plaintiff Service Employees International Union National Industry Pension Fund ("SEIU Pension Fund") is an employee pension benefit plan within the meaning of Sections 3(2), (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The SEIU Pension Fund is and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The SEIU Pension Fund is administered at 1800 Massachusetts Avenue NW, Suite 301, Washington, DC 20036.

6. Plaintiff Trustees of the SEIU Pension Fund, William Dempsey, Roderick S.

Bashir, Kevin J. Doyle, Christopher Bouvier, Thomas LaMartina, Edward J. Manko, John J. Sheridan, Frank A. Maxson, Laphonza Butler, and David Huerta are the duly authorized Trustees of the SEIU Pension Fund whose duty it is to administer the SEIU Pension Fund for the benefit of the participants and beneficiaries of the SEIU Pension Fund. Plaintiff Trustees are fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are authorized and empowered to maintain this action.

7. Defendant Little Rock Baptist Charity Care Center, Inc. doing business under the assumed name Lakeshore Healthcare Skilled Nursing & Specialty Care – Woodward Campus ("Lakeshore") is an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), and (12), and Sections 2(2), (6), and (7) of the LMRA, 29 U.S.C. §§ 152(2), (6), and (7).

8. Upon information and belief, Defendant Lakeshore is a corporation incorporated in the state of Michigan, with a mailing address of 7310 Woodward Avenue, Detroit, Michigan 48202.

## Factual Background

9. At all relevant times, Service Employees International Union Healthcare Michigan ("the Union") has been the exclusive bargaining representative for all bargaining unit employees employed by Defendant.

10. At all relevant times, the Defendant was party to a series of collective bargaining agreements ("Collective Bargaining Agreements" or "CBAs") with the Union for its employees working as full-time and regular part-time certified nurse's aides, activity aids, dietary aides, cooks, housekeeping, maintenance, laundry employees, and licensed practical nurses employed

by the Defendant at its facility located at 9146 Woodward Avenue, Detroit, Michigan. Specifically, the Defendant was party to a CBA with the Union effective December 17, 2010 to December 17, 2013 ("2010 CBA"). A true and complete copy of the 2010 CBA is attached as Plaintiffs' Exhibit 1. Pursuant to Section 18.1 of the 2010 CBA it remained in effective for successive years thereafter, unless one party served written notice upon the other of its desire to modify the Agreement. Ex. 1, Sec. 18.1. Neither party served such notice, and the 2010 CBA remained in effect until the parties entered into a subsequent CBA effective for the period of December 15, 2014 to December 14, 2017 ("2014 CBA"). A true and complete copy of the 2014 CBA is attached as Plaintiffs' Exhibit 2.

11. Pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, employers who are obligated to make contributions to a multi-employer employee benefit plan must do so in accordance with the terms of the applicable collective bargaining agreement. Here, Sec. 11.3 of the 2010 and 2014 CBAs states that the Defendant is obligated to remit contributions to the SEIU Pension Fund for its covered employees at the rate of $0.35 per regular hour actually worked. Ex. 1, Section 11.3; Ex. 2, Sec. 11.3.

12. By submitting reports and contributions to the SEIU Pension Fund, Defendant agreed to be bound by the SEIU Pension Fund's Agreement and Declaration of Trust ("Trust Agreement"). A true and complete copy of the Trust Agreement is attached as Plaintiffs' Exhibit 3. Pursuant to Section 3.2 of the Trust Agreement, the Trustees are empowered to create and enforce a collection policy for the assessment of unpaid and delinquent contributions. Exhibit 3, Sec. 3.2. Accordingly, Defendant is obligated to remit contributions to the SEIU Pension Fund in accordance with the collection policies adopted by the Trustees. A true and correct copy of the Statement of Policy for Collection of Delinquent Contributions ("Collection Policy") is attached

as Plaintiffs' Exhibit 4.

13. At all relevant times, Section 3.1 of the SEIU Pension Fund's Trust Agreement provides that an employer must submit complete remittance reports to the SEIU Pension Fund with the employer's contributions. The remittance report must contain the names of each covered employee and the number of compensable hours for each employee during the reporting month. Ex. 3, Sec. 3.1.

14. Section 2 of the Collections Policy states that "[i]f the Fund Office has not received the proper remittance reports to determine the amounts owed by the Employer, the Fund Office shall estimate the contributions due based on the most recent contributions remitted to the Fund and the Employer shall be deemed delinquent in its contributions in that amount, as a minimum, in any subsequent legal action." Ex. 3, Sec. 2.

15. Section 4 of SEIU Pension Fund's Trust Agreement and Section 5 of the Collections Policy both provide that the SEIU Pension Fund may audit any contributing employer for the purpose of ensuring that such employer has remitted the appropriate amount of contributions to the Pension Fund. Ex. 3, Sec. 4; Ex. 4, Sec. 5.

16. Section 3.2 of the Trust Agreement and Section 5 of the Collection Policy provide that an employer delinquent in its contribution obligations to the SEIU Pension Fund and the subject of a collection lawsuit is liable for interest at the rate of ten percent (10%) per annum, liquidated damages at the greater of the interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions after the commencement of legal action, and attorneys' fees and costs. Ex. 3, Sec. 3.2; Ex. 4, Sec. 5.

17. Pursuant to the Pension Protection Act of 2006, 29 U.S.C. § 1085 ("PPA"), the SEIU Pension Fund was determined to be in critical status for the plan years beginning January

1, 2009, January 1, 2010, January 1, 2011, January 1, 2012, January 1, 2013, January 1, 2014, January 1, 2015, January 1, 2016, and January 1, 2017. Participating employers in the Fund were notified of this status via letters sent April 30, 2009, April 30, 2010, April 30, 2011, April 30, 2012, April 30, 2013, April 28, 2014, April 28, 2015, April 28, 2016 and April 28, 2017. Copies of these letters are attached as Plaintiffs' Exhibit 5.

18. For plans in critical status, the PPA requires that all contributing employers pay to the plan a surcharge to help correct its financial situation. The amount of the surcharge is equal to a percentage of the amount an employer is otherwise required to contribute to the plan. For the SEIU Pension Fund, a five percent (5%) surcharge was applicable in the initial critical year (2009), and a ten percent (10%) surcharge was applicable in 2010 and for each succeeding plan year thereafter in which the plan is in critical status, until the bargaining parties agree to a collective bargaining agreement that implements one of the supplemental contribution schedules in the Rehabilitation Plan adopted by the SEIU Pension Fund or the Default Schedule is imposed on the participating employer. Participating employers were notified of the Rehabilitation Plan adopted by the SEIU Pension Fund in November 2009. A copy of this letter is attached as Plaintiffs' Exhibit 6.

19. The Defendant failed to elect a supplemental contributions schedule. Consequently, the Default Schedule was imposed upon Defendant beginning in June 2010. In accordance with the Default Schedule, Defendant was required to contribute an additional 21.3% of its underlying contributions as supplemental contributions. Pursuant to the Default Schedule, the supplemental contribution rate increased each year until January 2013. In 2011, the supplemental contribution rate was 33.7%; in 2012 the supplemental contribution rate was 47.4%; and since 2013 the supplemental contribution rate has remained at 62.5%.

20. During the period of June 2016 to the present, Defendant has failed to remit contractually required reports and contributions and has failed to pay interest charges, liquidated damages, and supplemental contributions due under the PPA to the SEIU Pension Fund.

21. Pursuant to the SEIU Pension Fund's Trust Agreement and Collections Policy, in 2016, the SEIU Pension Fund conducted a payroll audit of the Defendant for the period of 2014 through 2015. The audit revealed that Defendant owes contributions, interest, liquidated damages, and PPA supplemental contributions to the SEIU Pension Fund. While contributions remain unpaid, interest continues to accrue on these delinquent contributions and audit fees have been assessed pursuant to the Fund's governing documents. A true and complete copy of the audit is attached as Exhibit 7.

22. Prior to commencing this lawsuit, the SEIU Pension Fund sent several letters and attempted to contact the Defendant in efforts to obtain the outstanding contributions, interest, liquidated damages, and PPA supplemental contributions from the Defendant.

23. On May 8, 2017, Fund Counsel received correspondence from Nancy Byrd, Senior Accounting Manager for the Defendant acknowledging the amounts owed pursuant to the audit and requesting a payment plan. A true and correct copy of this correspondence is attached as Plaintiffs' Exhibit 8.

24. Thereafter, the parties entered into discussions regarding a payment plan. On May 26, 2017, the SEIU Pension Fund's Trustees approved a 13-month payment plan in which the Company would make 12 monthly installment payments of $3,000 and a final monthly installment payment of $3,679.48, beginning July 15, 2017. Lakeshore, however, failed to execute the agreement with the SEIU Pension Fund.

## COUNT I – Amounts Owed Pursuant to Audit

25. Plaintiffs reallege and incorporate Paragraphs 1 through 24.

26. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

27. Defendant is obligated, pursuant to collective bargaining agreements, to provide contributions to the SEIU Pension Fund on behalf of its covered employees. Defendant has failed and refused to fulfill its contractual obligations for owed contributions (including PPA supplemental contributions), resulting interest and liquidated damages, as demonstrated by the SEIU Pension Fund's payroll audit for the period of 2014 through 2015.

28. The audit revealed that Lakeshore owes contributions in the amount of $18,783.76, PPA supplemental contributions in the amount of $10,960.17, interest through November 1, 2017 in the amount of $9,439.63, liquidated damages in the amount of $6,104.72, and a testing fee in the amount of $1,755.56. The audit also revealed that Defendant had a total overpayment of $1,247.49 for certain months. In total, Defendant owes $45,796.35 to the SEIU Pension Fund pursuant to the audit.

29. Prior to commencing this lawsuit, the SEIU Pension Fund sent several letters and attempted to contact the Defendant in efforts to obtain the outstanding contributions, interest, liquidated damages, and PPA supplemental contributions from the Defendant.

30. On May 8, 2017, Fund Counsel received correspondence from Nancy Byrd, Senior Accounting Manager for the Defendant which said "We have an outstanding balance of $37,738.60 as of May 2, 2017. We as Lakeshore Healthcare Group would like to set-up a payment plan with you and the SEIU to get this outstanding balance paid as soon as possible but we are unable to pay the total due in one payment." See Exhibit 8. In a subsequent email, Ms.

Byrd wrote: "[W]e would like to pay $3,000 per month till the balance is paid in full." *Id.*

31. On May 26, 2017, the SEIU Pension Fund's Trustees approved a 13-month payment plan in which the Company would make 12 monthly installment payments of $3,000 and a final monthly installment payment of $3,679.48, beginning July 15, 2017. Lakeshore, however, failed to execute the agreement with the SEIU Pension Fund.

32. On July 28, 2017, Plaintiffs received a payment of $3,000 from Lakeshore. Despite multiple attempts by the Fund to obtain a signed agreement and additional monthly payments, Lakeshore has failed to communicate with Plaintiffs or submit any subsequent payments.

33. Taking into account its single payment of $3,000, Lakeshore currently owes $42,796.35 pursuant to the audit. Interest continues to accrue on this outstanding balance at a rate of $8.36 per day.

34. Defendant refuses to make payment on the outstanding balance. There is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the SEIU Pension Fund, and pay the delinquent and unpaid contributions, liquidated damages and interest due to the SEIU Pension Fund.

35. Defendant's continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the Pension Fund, endangered the eligibility of covered members' pension benefits, and other harm. Defendant's failure and refusal to comply with its obligations creates an atmosphere in the industry that encourages other employers to do the same.

36. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g), Plaintiffs are entitled to recover all costs of this action, including reasonable attorneys' fees and court costs.

## **COUNT II – Reports and Contributions Owed**

37. Plaintiffs reallege and incorporate Paragraphs 1 thorough 36.

38. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1332(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

39. Defendant is obligated, pursuant to collective bargaining agreements, to provide contributions to the SEIU Pension Fund on behalf of its covered employees. Defendant has failed and refused to fulfill its contractual obligations for owed contributions (including PPA supplemental contributions), resulting interest and liquidated damages.

40. Defendant has failed to submit remittance reports and contributions for the period of July 2016 through the present. Because these reports have not been submitted, the amount of money due to the Fund is unknown and cannot be ascertained without an accounting of the number of compensable hours for each employee of the Defendant during the reporting month.

41. In accordance with Section 2 of the Fund's Collections Policy, the SEIU Pension Fund estimated the contributions owed by the Defendant for the period of July 2016 to September 2017 based on the hours reported for June 2016. Using the estimated hours, Lakeshore owes $69,188.44 in contributions, $4,074.22 in interest (through October 16, 2017), and $13,837.69 in liquidated damages for a total of $87,100.34. Interest continues to accrue on all unpaid amounts until the date that they are actually received by the Fund.

42. Prior to commencing this lawsuit, the SEIU Pension Fund attempted to contact Defendant in efforts to obtain the outstanding remittance reports and contributions for these months. Defendant continues to refuse to provide the missing reports or make payments on the resulting amounts due. There is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the SEIU Pension Fund, and pay the delinquent and unpaid

contributions, liquidated damages and interest due on the delinquent and unpaid contributions.

43. Defendant's continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the Pension Fund, endangered the eligibility of covered members' pension benefits, and other harm. Defendant's failure and refusal to comply with its obligations creates an atmosphere in the industry that encourages other employers to do the same.

44. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g), Plaintiffs are entitled to recover all costs of this action, including reasonable attorneys' fees and court costs.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1. Declare that Defendant is delinquent in submitting remittance reports for the period of July 2016 to September 2017 and any other months that become due and owing during the pendency of this lawsuit and Order Defendant to pay the corresponding outstanding contributions, interest, liquidated damages, and PPA surcharges and supplemental contributions for these delinquent months;

2. Enter judgment in the amount of $42,796.35 pursuant to the audit conducted for the period of 2014-2015, plus any additional interest that becomes due during the pendency of this lawsuit;

3. Enter judgment for Plaintiffs' attorneys' fees and costs, as required by the Collective Bargaining Agreement, the Trust Agreement and Section 502(g) of ERISA;

4. Retain jurisdiction of this case pending compliance with its Orders; and,

5. Grant such relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Suzanne E. Summerlin
*Suzanne Elizabeth Summerlin*
DC Bar No. 1044859
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 Facsimile
ssummerlin@mooneygreen.com
Counsel for the Plaintiffs

Dated: October 26, 2017

**CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)**

I hereby certify that on this 26th day of October, 2017, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, REMITTANCE REPORTS, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

_____/s/ Suzanne E. Summerlin_____